Putnam J.,
at a subsequent day in this term, delivered the opinion of the Court. It has been settled in the former decision of questions of law raised in this case, that the bond was to be considered as a contract for a sale, and not as an actual sale which vested the property in Scholfield.[1] It was intended that the property in the factory, as well as in the machinery, should continue in Ayer until Scholfield should have paid the notes, at the times when they should become due, but that Scholfield should have the actual use and occupation of the property so long as he complied with the conditions, and no longer. The attachment and the sale by the defendant were made before the first instalment became due, while Scholfield had the possession and the right to the possession.
*162 And, unless the contract were rescinded, it is our opinion, that the plaintiff could not maintain trover for the injury of which he complains.[2]
Lord Kenyon had indeed ruled otherwise in Ward v. Macauley, 4 T. R. 489, but that was an action of trespass, in whicfi the point now under consideration did notarise. And his lordship and all his brethren, in the case of Gordon v. Harper, 7 T. R. 11, considered that the opinion upon this point m Ward v. Macauley, was extrajudicial; and all concurred in the opinion, lhat the plaintiff must have a right to the possession as well as the right of property, to maintain trover.
The case is there put, of a right to use a factory with the machinery, as an interest (more or less valuable) which might be taken by creditors during the term. Now Scholfield had the right to use the machinery and this factory from the 1st of November, when it was attached, until the 1st of February, when the first note fell due ; and if he should have paid that note, then he was to have the use of the factory and machinery until the next note should become due ; and so on, until the whole amount should be paid.
The creditor of Scholfield can be in no better situation than he would have been in himself. If he had taken down the machinery, and removed it from the factory and sold it, such conduct would have been unlawful, and according to the case of Farrant v. Thompson, 5 Barn. & Ald. 826, might have been considered as a putting an end to the contract on his part, and a revesting of the possession in the owner by the operation of law, so as to enable him to maintain trover against the vendee.[1] And it has been argued for the plaintiff, that the same result should follow a removal and sale by the creditors, or a sheriff on their behalf; that by such acts the contract between Ayer and Scholfield would be terminated, so as to enable Ayer to maintain trover immediately against the officer. It is to be remarked, that the proceedings of the creditors and of the officer, under the processes of law against Scholfield, were in invitum; so that what might have been properly considered as *163 a termination of the contract, if it had been done by Scholfield himself, might not have that effect if done by others against his will. The case of Smith v. Putnam, 3 Pick. 223,[2] was determined upon that distinction. But the plaintiff has filed counts in trespass upon the case, which are adapted to the facts proved. He has proceeded at the trial upon the ground that the contract was in force, and the jury were instructed not to allow any damage for the detention of the property from the time of the attachment to the first of February, when the first note should have been paid. It is not necessary therefore to determine, whether or not the contract was terminated by the officer, acting for the creditors of Scholfield.
It has been contended for the defendant, that no action whatever will lie for the plaintiff under the circumstances of this case. Now it has been already decided, that this was a lawful contract which the plaintiff made with Scholfield, and the jury have found that it was an honest transaction. We think that this objection is unfounded. If trover could not, we are satisfied that trespass upon the case could be maintained for such an injury to the reversionary interest in personal property.[1] In 1 Chit. Pl. 197, it is said, that case is the proper remedy ; and counts in trespass upon the case may be joined with a count in trover. 1 Chit. Pl. 195, [7th Am. ed. 230,] of Joinder of dictions.
We think that the instructions to the jury were correct.
The only remaining consideration is, whether the damages are excessive. The jury have found three times as much as was produced by the sheriff’s sale of the goods by auction.
It is very clear that Scholfield had no right to separate the machinery from the factory and dispose of it during the term. It was to be used in the factory. But the attaching creditors originally proceeded upon the ground that the absolute property in the machinery was in Scholfield, and made their sale *164 upon that belief. They were notified, however, of the plaintiff’s claim. The counsel as well for Ayer as for Scholfield, were residing in the same town where the factory stood, and the officer knew the contradictory opinions which those gentlemen held upon the case. The officer was forbiuuen to take down the machinery, or to remove or sell it. But he proceeded to take the machinery front the factory, and to sell it in separate pieces, as if it had been the absolute property of Scholfield. The officer acts at his peril, and is answerable for f>ny mistake. It turns out after a patient examination, that he has sold the property of the plaintiff to pay the debts of Scholfield. The jury were to compensate in damages in this case, upon the principle of placing the plaintiff in as good a condition as if his property had not been taken, deducting the value of Scholfield’s right to use it until the 1st of February ; and there is evidence to prove that it was worth a sum exceeding the amount of the verdict, as it stood connected with the factory. It is obvious that the auction sale in parcels could not be conclusive against the plaintiff. And although we all think that this verdict is for a larger sum than we should have given, yet we cannot say that it is against the evidence or even the weight of evidence.[1]
The motion for a new trial must be overruled, and judgment rendered according to the verdict.

 See Corlies v. Gardner, 2 Hall, (N. York,) 345; Phelps v. Willard, 16 Pick. 32; Ward v. Shaw, 7 Wendell, 404; Reed v. Upton, 10 Pick. 522; Blood v. Palmer, 2 Fairfield, 414 ; Sawyer v. Shaw, 9 Greenleaf, 47; Reeves v. Harris, 1 Bailey, 563; Barrett v. Pritchard, 2 Pick. 516; Whitwell v. Vincent, 4 Pick. 451, 452; 2 Kent’s Comm. (3d ed.) 497; Meldrum v. Snow,post, 441; Sargent v. Gile, 8 N. Hamp. R. 325.

 See Fairbanks v. Phelps, 22 Pick. 538,539.

 See Daniels v. Pond, 21 Pick 371 ; Walcot v. Pomeroy, 2 Pick. (2d ed | 122,123 and note 1; Tibbetts v. Towle, 3 Fairfield, 341.

 See 2d ed. 222, 223, notes; Fairbanks v. Phelps, 22 Pick. 539.

 See M'Gowan v. Chapen, 2 Murph. 61; Hillard v. Dortch, 3 Hawks, 246; 1 Chitty on PI. (7th Am. ed.) 153.
Case is the proper action for a reversioner against a stranger for injuries done to his reversionary interest in real estate. Lienow v. Ritchie, 8 Pick. 235; Hall v. Snotohill, 2 Green, 8; Randall v. Cleaveland, 7 Connect. R. 328; Elliott v. Smith, 2 N. Hamp. R. 430 Brown v. Dinsmoor, 3 N. Hamp. R. 103.

 Where the amount of damages is matter of opinion merely, the fact that the jury have fixed them at a greater or less sum than any of the witnesses, is not a ground for a new trial. Hopkins v. Myers, 1 Harper, 56; Brewer v. Tyringham, 12 Pick. 547; Harvey v. Huggins, 2 Bailey, 252; Park v. Hopkins, 2 Bailey, 408 ; Bodwell v. Osgood, 3 Pick. 379; Shute v. Bassett, 7 Pick. 82; Deems v. Quarrier, 3 Randolph, 475; Douglass v. Toucey, 2 Wendell, 352; Nettles v. Harrison, 2 M'Cord, 230; Mahoney v. Frasi, 1 Crompt. & Meeson, 325; Reed v. Davis, 4 Pick. 216; Neal v. Lewis, 2 Bay, 204 ; Riley v. Nugent, 1 Marshall, (Ken.) 431 ; Sheppard v. Lark, 2 Bailey, 576; Davis v. Davis, 2 Nott. &. M'Cord, 81; Boies v.M‘Allister, 3 Fairfield, 308; Worster v. Proprietors of Canal Bridge, 16 Pick. 547, 548; Gough v. Farr, 1 Younge & Jerv. 477; S. C. 3 Carr. & Payne, 631.